IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESILIENT FLOOR COVERING PENSION FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL'S FLOOR COVERING, INC.,<br><br>Defendant. | Case No.: C11-5200 JSC<br><br>**ORDER RE: PLAINTIFFS' MOTION FOR PROTECTIVE ORDER (Dkt. No. 37)** |

In this enforcement action brought under the Employee Retirement Income Security Act ("ERISA"), Plaintiffs Resilient Floor Covering Pension Trust Fund Board of Trustees and Resilient Floor Covering Pension Trust Fund move for a protective order against Defendant Michael's Floor Covering, Inc. ("Michael's"). (Dkt, No. 37.) Plaintiffs seek to prevent or substantially limit Defendant's discovery of purportedly privileged and protected materials. Defendant contends that Plaintiffs, by and through their previous conduct, expressly waived the attorney-client privilege and work product protection, and that Defendant's discovery should therefore be unlimited. Having considered the parties' filings and having had the benefit of oral argument on July 12, 2012, the Court GRANTS Plaintiffs' Motion for Protective Order in part and DENIES the motion in part.

**FACTUAL & PROCEDURAL BACKGROUND**

Studer's Floor Covering, Inc. ("Studer's") performed building and construction industry work consisting of sales and installation of residential and commercial flooring products in and around the Vancouver, WA and Portland, OR market from 1960 to 2009. (Dkt. No. 19 ¶¶ 5, 7.) Studer's shareholders dissolved the corporation in December 2009. (Dkt. No. 19 ¶ 8.) Prior to its dissolution, Studer's was a party to a Collective Bargaining Agreement ("CBA") with the Linoleum, Carpet and Soft Tile Applicators Local Union No. 1236, which is affiliated with District Council No. 5 of the International Union of Painters and Allied Trades, AFL-CIO ("IUPAT" or "Union"). (Dkt. No. 19 ¶ 6.) Pursuant to the CBA and section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, Studer's made regular pension contributions to Plaintiff Resilient Floor Covering Pension Trust Fund ("Trust Fund") for all Studer's employees performing work covered under the CBA. (Dkt. No. 19 ¶ 7.) On or about January 6, 2010, Studer's sent formal notice of its dissolution to Trust Fund, enclosing its final pension contribution under the CBA and advising that Studer's was no longer a contributing employer. (Dkt. Nos. 19 ¶ 12; 19-2 at 7.)

Shortly before the Studer's liquidation, in October 2009, Mike Haasl, a longtime Studer's employee, incorporated Michael's Floor Covering, Inc. ("Michael's" or "Defendant"). (Dkt. No. 18 ¶ 20.) This suit arises out of the dissolution of Studer's and subsequent opening of Michael's. Plaintiffs, the Pension Trust Funds to which Studer's belonged, allege that Michael's is a successor to Studer's and that Michael's should be ordered to either pay withdrawal liability to Plaintiff Trust Fund or continue making monthly contributions, including those now allegedly delinquent, under the CBA. (Dkt. No. 1.) Studer's and Michael's both deny the existence of a successor relationship between the two companies. (Dkt. Nos. 18-19.) Pending before the Court is Plaintiffs' Motion for Protective Order, which stems from Defendant's requests for allegedly privileged materials and information. The lynchpin of this dispute is Plaintiffs' pre-litigation attorney-client e-mail communication dated September 13, 2011 (the "September 13 e-mail"), which through a

2

series of forwards ended up in the hands of the Defendant; as a result, Defendant claims that the attorney-client and work product privileges have been waived with respect to both the email and the subject matters discussed in the email.

The September 13 e-mail was originally drafted and sent by Plaintiffs' counsel George Kraw to Plaintiffs' Trustee Doug Christopher. The email is clearly marked "Attorney-Client Privileged/Attorney Work Product" and details Mr. Kraw's understanding of the facts of the Studer's/Michael's case and the legal merits of Plaintiffs' potential claims. (Dkt. No. 35-2 at 3-6.) The next day, Doug Christopher (a party) forwarded the September 13 e-mail to a higher up within the Union (a non-party) to inquire about a potential conflict of interest on the part of Studer's attorney, William Ecklund, and asked that his concerns be passed upstream.[1] (Dkt. No. 35-2 at 3-6.) After a few additional forwards, the September 13 e-mail ended up in the possession of various members of the Finishing Contractors Association and Mr. Ecklund himself. (Dkt. No. 35-2 at 3-6.) Counsel for Defendant eventually obtained a copy of the e-mail chain from Mr. Ecklund and filed it with the Court in connection with a February 2012 discovery dispute. (Dkt. Nos. 35-2 at 2; 18-1 at 4-7.)

On May 24, 2012, Defendant served Plaintiffs with a Rule 30(b)(6) deposition notice, which listed as proposed topics many issues that relate to matters typically subject to attorney-client privilege or attorney work product protection. (Dkt. No. 35-1 at 6-7.) The deposition notice included twelve document requests seeking attorney-client communications related to "Plaintiffs' counsel's analysis of, or opinion about" various legal issues in the case. (Dkt. No. 35-1 at 6-9.) Plaintiffs objected to the proposed topics on the basis of privilege and/or work product protection. (Dkt. No. 35-1 at 1.) In response, Defendants argued that Plaintiffs had expressly waived the attorney-client privilege and

---

[1] Trustee Christopher was concerned that Mr. Ecklund, a board member of the Union-affiliated Finishing Contractors Association, was "lending his industry experience" to Studer's, a potential Union adversary. (Dkt. No. 35-2 at 4.) In the e-mail, Christopher stated that he would "seriously consider rescinding" funding from the Finishing Contractors Association and that someone at the Union should look into the perceived conflict. (Id.)

3

work product protection by virtue of Plaintiffs' Trustee's dissemination of the September 13 e-mail to third-party Union officials. (Dkt No. 35-1 at 1.)

The parties, unable to resolve the issues surrounding the September 13 e-mail through the meet and confer process, filed a joint discovery statement detailing the dispute. (Dkt. No. 35.) The Court then issued an order setting forth a briefing schedule for the instant Motion for Protective Order. (Dkt. No. 36.). Plaintiffs seek an order declaring that the requested materials, including the September 13 e-mail, are protected under the attorney-client privilege or the work product doctrine and not subject to waiver. (Dkt. No. 37.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1). District courts have broad discretion in determining whether evidence is relevant for discovery purposes. See Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005). The scope of discovery should be liberally construed to ensure full and fair resolution of disputes; however, the scope "is limited by the attorney work product doctrine and any relevant privileges, including the attorney-client privilege." Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., 237 F.R.D. 618, 621-22 (N.D. Cal. 2006) (applying Federal Circuit law) (internal citations omitted).

A party may file a motion for a protective order pursuant to Rule 26(c), and the Court may "issue an order to protect a . . . person from . . . undue burden," including "forbidding the disclosure or discovery," "specifying the terms, including time and place, for the disclosure or discovery," "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters," or "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c). The Supreme Court has interpreted Rule 26(c) as conferring "broad discretion on the trial court to decide when a protective

1 order is appropriate and what degree of protection is required." See Seattle Times Co. v.
2 Rhinehart, 467 U.S. 20, 36 (1984).

## DISCUSSION

The attorney-client privilege and work product protection protect distinct interests. See United States v. Am. Tel. and Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980). To determine how, when, and to what extent a party may assert either the attorney-client privilege or work-product protection, the Court must consider the respective interests that the doctrines seek to protect. See id.

"The attorney-client privilege seeks to protect confidential communications, to assure the client that any statements he makes in seeking legal advice will be kept strictly confidential between him and his attorney; in effect, to protect the attorney-client relationship." Id. In other words, the privilege exists "to encourage the full and frank communication between attorneys and their clients" to ensure clients receive sound legal advice based on complete disclosure. Upjohn Co. v. United States, 449 U.S. 383, 389; Leland Stanford Junior Univ., 237 F.R.D. at 622 (internal quotations and citations omitted). By contrast, work product protection seeks to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent." Am. Tel. and Tel. Co., 642 F.2d at 1299; see also Fed. R. Civ. P. 26(b)(3). In order for an attorney to properly prepare his client's case, he must be able to "assemble information, sift what he considers to be the relevant from irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." Hickman v. Taylor, 329 U.S. 495, 511 (1947). In short, the attorney-client privilege is about maintaining confidentiality; the work product doctrine protects the integrity of the adversary system. See Am. Tel. and Tel. Co., 642 F.2d at 1299.

There are three questions before the Court: 1) whether the September 13 e-mail is protected under the attorney-client privilege, the work product doctrine, or both; 2) if so, whether either protection was waived; and 3) the scope of any such waiver. The Court will

now address each privilege in turn and then consider the relevance of the evidence at this stage of the proceedings.

## I. Attorney-Client Privilege

### A. Applicability

Plaintiffs assert that the September 13 e-mail was a confidential attorney-client communication and thus privileged. (Dkt. No. 37 at 6-8.) Defendant counters that Plaintiffs waived the privilege by voluntarily disseminating the communication to third parties. (Dkt. No. 48 at 2-3.) Before addressing the question of waiver, however, the Court must determine if the attorney-client privilege ever attached to the communication in the first place. For the reasons set forth below, the Court finds that the September 13 e-mail was, at least at the time of its creation, a privileged communication.

The attorney-client privilege protects confidential communications between attorney and client for the purpose of ensuring effective legal advice. Upjohn, 449 U.S. at 389. The attorney-client privilege is strictly construed because it may impede "full and free discovery of the truth." Weil v. Inv./Indicators, Research and Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981). "To prevent abuse and assure the availability of relevant evidence . . . the privilege is limited to only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." In re Grand Jury Investigation, 974 F.2d 1068, 1070 (9th Cir. 1992). The party asserting privilege bears the burden of proof as to the privileged nature of the documents or communications in question. Id.; Weil, 647 F.2d at 25 ("As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it.")

Here, Plaintiffs have met their initial burden of establishing that the privilege applies. The email was sent by Mr. Kraw, counsel for Plaintiffs, to one of his clients, and is preceded with the heading "Attorney-Client Privileged/Attorney Work Product." (Dkt. No. 35-2 at 4.) The e-mail then proceeds in the form of a standard attorney-client memorandum, laying out the facts as understood by Mr. Kraw and frankly applying what he views as the relevant legal

1  standards.  (Dkt. No. 35-2 at 4-5.)  The September 13 e-mail is a quintessential attorney-
2  client communication requiring "full and frank" disclosure and is therefore privileged.
3       However, the privilege-asserting party must also show that the privilege has not been
4  waived.  McMorgan & Co. v. First Cal. Mortgage Co., 931 F. Supp. 703, 707 (N.D. Cal.
5  1996) (citing Weil, 647 F.2d at 25). The question, then, is whether Trustee Doug
6  Christopher's voluntary dissemination of the September 13 e-mail waived the protection
7  afforded by the attorney-client privilege.

**B.  Waiver**

9       There are two primary ways in which a party can waive the attorney-client privilege.
10 See Weil, 647 F.2d at 24.  First, a party may impliedly waive the privilege by asserting a
11 claim or defense that relies on privileged materials as its basis.  Id.; see also Chevron Corp.
12 v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992) ("Where a party raises a claim [or
13 defense] which *in fairness* requires disclosure of the protected communication, the privilege
14 may be implicitly waived" (emphasis added)).  Here, however, Plaintiffs do not make an
15 "advice of counsel" defense or otherwise rely on any privileged attorney-client
16 communication to form the basis of their claims or defenses.  Therefore, Plaintiffs have not
17 waived the attorney-client privilege in this particular manner.
18      Second, and much more relevant here, a party may expressly waive the attorney-client
19 privilege by disclosing privileged communications to third parties.  Weil, 647 F.2d at 24.
20 The client, as holder and guardian of the privilege, is deemed to have waived the privilege
21 upon dissemination to a third-party.  Id.  Once the proverbial cat is out of the bag, the client
22 has defeated the underlying purpose of maintaining confidentiality, and therefore the
23 communications are no longer worthy of protection.  See Nidec Corp. v. Victor Co. of Japan,
24 249 F.R.D. 575, 578 (N.D. Cal. 2007).  However, if the privileged communication is
25 disclosed to a party with a common legal interest, the "joint defense" or "common interest"
26 privilege might apply.  See id.
27      The common interest privilege applies where: "(1) the communication is made by
28 separate parties in the course of a matter of common interest; (2) the communication is

1 designed to further that effort; and (3) the privilege has not been waived." United States v.
2 Bergonzi, 216 F.R.D. 487, 495 (N.D. Cal. 2003); see also United States v. Mass. Inst. of
3 Tech., 129 F.3d 681, 685-88 (1st Cir. 1997) (defining "common interest" narrowly as that
4 which requires allied lawyers and clients working together such that a free exchange of
5 information between the parties is essential). Here, Plaintiffs expressly waived the attorney-
6 client privilege when Trustee Doug Christopher forwarded the September 13 e-mail to
7 officials at the Union. Even though the parties' interests are partially aligned in the sense
8 that some funds collected by Plaintiffs pay Union pensions, the parties are not aligned in a
9 joint litigation effort and the September 13 e-mail, which was forwarded for an entirely
10 different reason (to inquire about a potential conflict of interest), is not indicative of any such
11 relationship. As such, Plaintiffs waived the attorney-client privilege, at least as to the email
12 itself, when Plaintiffs' Trustee forwarded the September 13 e-mail to a third-party.

## II. **Work Product Protection**

### A. Applicability

Plaintiffs assert that the September 13 e-mail is separately entitled to protection under the work product doctrine. (Dkt. No. 37 at 4-6); see Fed. R. Civ. P. 26(b)(3). Defendant again counters that Plaintiffs waived protection by voluntarily disseminating the communication to a third-party. (Dkt. No. 48 at 5-7.) As a preliminary matter, the Court must determine if the communication was ever entitled to work product protection. Leaving aside the question of waiver, for the reasons set forth below the Court finds that the September 13 e-mail was once protected by the work product doctrine.

The work product doctrine, first articulated in Hickman v. Taylor, 329 U.S. at 511, and codified in Federal Rule of Civil Procedure 26(b)(3), is "a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." Admiral Ins. Co. v. United States District Court, 881 F.2d 1486, 1494 (9th Cir. 1989). To qualify for work product protection, documents must have two characteristics: "(1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party [to the litigation] or by or for that other party's

1 representative." In re Cal. Pub. Utils. Comm'n, 892 F.2d 778, 780-81 (9th Cir. 1989); Fed. R. Civ. P. 26(b)(3).

Rule 26(b)(3) states that, upon a showing of *substantial need* and *undue hardship* by the requesting party, a court may order discovery of work product, but "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney . . ." Id. 26(b)(3)(A)-(B). Attorneys' mental impressions, conclusions, opinions, and legal theories are most commonly referred to as "opinion" work product (as opposed to "ordinary" work product) and are afforded the utmost protection. See Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 577 (9th Cir. 1991) (requiring a "compelling need" to discover opinion work product, but not extending absolute protection); cf. In re Murphy, 560 F.2d 326, 336 (8th Cir. 1977) ("[O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances").

Here, the September 13 e-mail was prepared by Plaintiffs' attorney, George Kraw, as an assessment of potential legal action against Defendant and Studer's. The e-mail was labeled "Attorney Work Product," and contains Mr. Kraw's mental impressions and legal theories regarding this case. Thus, the communication is clearly entitled to qualified protection under the work product doctrine. Further, the communication constitutes "opinion" work product to the extent that it represents counsel's interpretation, analysis, and legal theories regarding the then-potential case.

To compel production of materials protected under the work product doctrine, Defendant must demonstrate substantial need for the materials and inability to obtain their equivalent without undue hardship; however, even if Defendant demonstrates substantial need and inability to obtain equivalent information without undue hardship, the Court must still protect opinion work product (attorneys' mental impressions, legal conclusions, etc.) Fed. R. Civ. P. 26(b)(3); see also Leland Stanford Junior Univ., 237 F.R.D. at 622. Defendant's Notice of 30(b)(6) Deposition Duces Tecum requests almost exclusively opinion work product, and thus Defendant must show a compelling need for the materials if the protection has not been waived. Defendant makes minimal effort to demonstrate any

9

1 need for the requested work product, let alone a compelling need, and instead relies primarily
2 on a theory of waiver.

**B. Waiver**

A party may waive work product protection where it discloses otherwise protected documents to a third party and thereby enables an adversary to gain access to the information. Pecover v. Elec. Arts Inc., No. 08-2820, 2011 WL 6020412, at *1 (N.D. Cal. Dec. 2, 2011); see also Am. Tel. and Tel. Co., 642 F.2d at 1298-99 (requiring a disclosure to "substantially increase" the likelihood of an adversary obtaining the protected information for a finding of waiver).

Similar to waiver of the attorney-client privilege, but construed more liberally, an exception to work product waiver exists for disclosures between parties with "common interests." Am. Tel. and Tel. Co., 642 F.2d at 1298-99; see McMorgan, 931 F. Supp. at 709 ("The standard for waiver of work product protection is more lenient than the standard for waiver of attorney-client privilege because the two privileges serve different purposes." (internal citations omitted)). "The common interest doctrine is a narrow exception to the rule of waiver that provides that disclosure to a third party does not waive work product protection where the third party shares a common interest with the disclosing party that is adverse to that of the party seeking the discovery." Pecover, 2011 WL 6020412, at *2. Common interests in the work product realm are not construed so narrowly as to limit the exception only to co-parties. Am. Tel. and Tel. Co., 642 F.2d at 1299. The shared interest may be only financial or commercial in nature. Pecover, 2011 WL 6020412, at *2. Essentially, a court must determine if disclosure is consistent with the work product doctrine's purpose of preserving the adversary system. See Am. Tel. and Tel. Co., 642 F.2d at 1299; see also United States v. Deloitte LLP, 610 F.3d 129, 141 (D.C. Cir. 2010) (finding no waiver where the disclosing party had "a reasonable basis for believing that the recipient would keep the disclosed material confidential").

The Court finds that Plaintiffs and the Union have a common financial interest in collecting benefit contributions from participating employers. Plaintiffs Trust Fund and the

1  Board of Trustees manage the contributions for the benefit of past and present Union
2  employees, and thus their interests are aligned. Notwithstanding the Court's findings, it is
3  undisputed that the e-mail eventually left the sphere of common interest. Doug Christopher
4  forwarded the September 13 e-mail verbatim with instructions to "pass [his] concern[s]
5  upstream" and without any request that the Union keep the information confidential. (Dkt.
6  No. 35-2 at 4.) Christopher's post-hoc statement that he was "shocked" that the e-mail
7  escaped into the hands of the adversary and that this was not his intention is immaterial.
8  (Dkt. No. 37-2 at 2.) Christopher's act of forwarding the September 13 e-mail in this manner
9  substantially increased the likelihood of – and in fact led to – disclosure to an adversary and
10 was thus inconsistent with preserving the adversary system. This amounts to a waiver of the
11 work product protection.

12       Having found that both the attorney-client privilege and work product protection are
13 waived as to the September 13 e-mail, the Court must now consider the scope of the waiver;
14 namely, whether Plaintiffs' conduct constitutes a subject matter waiver as to all related
15 privileged and protected materials.

16 **III.**    **Scope of Waiver**

17       A finding of subject matter waiver would entitle Defendant to discovery of "all
18 documents and communications arising out of the same transaction." Navajo Nation v.
19 Peabody Holding Co., Inc., 255 F.R.D. 37, 47 (D.D.C. 2009). The doctrine of subject matter
20 waiver prevents a party from disclosing certain privileged materials, while selectively
21 withholding others, presumably to mislead an adversary and gain an advantage. Id. The
22 Court must tailor the scope of Plaintiffs' waiver in this case to comport with fairness and the
23 underlying purposes of the attorney-client privilege and work product doctrine.

24       In the attorney-client privilege context, disclosure of confidential materials to anyone
25 not sharing a common legal interest indicates that the party holding the privilege no longer
26 cares about confidentiality. Because the underlying purpose of confidentiality is defeated by
27 an express disclosure, subject matter waiver may be appropriate. In those instances, courts
28 often find subject matter waiver in order to protect against a risk of "selective disclosure" (a

party intentionally disclosing materials helpful to its case while using privilege to conceal detrimental information on the same topic). See Martin Marietta Corp. v. Pollard, 856 F.2d 619, 626 (4th Cir. 1988).

By contrast, express disclosure of attorney work product, and more specifically opinion work product, has a different effect. Pure opinion work product is not likely to be used as evidence at trial. See Am. Tel. and Tel. Co., 642 F.2d at 1301; Martin Marietta, 856 F.2d at 626. Instead, opinion work product merely offers insight into opposing counsel's strategy, arguments, and mental processes – information the discovering party normally has no right to. Once a party discloses opinion work product, the information cannot be erased from opposing counsel's mind (the "bell cannot be unrung"). For this reason there is rarely a fairness justification mandating further insight into attorney opinions. Unless a party affirmatively places attorney opinions at issue (referred to as "issue injection") or engages in selective disclosure, disclosure of additional opinion work product is not likely justified. See Navajo Nation, 255 F.R.D. at 48-50. Thus, absent issue injection and/or selective disclosure, courts limit waiver of work product protection to maintain the adversary system. See id.; see also Martin Marietta, 856 F.2d at 626 ("[T]he protection of lawyers from the broad repercussions of subject matter waiver in [the context of pure opinion work product] *strengthens* the adversary process" (emphasis added)).

In this case, it is not necessary to clearly distinguish between attorney-client privilege and work product protection as they relate to the issue of subject matter waiver. Considering the significant overlap between the privileged and protected materials sought and that courts generally construe waiver of work product protection more narrowly, the Court will analyze scope through the work product lens. See generally Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1422 (11th Cir. 1994) (applying a restrictive view of waiver with regard to work product); Martin Marietta, 856 F.2d at 625-26 (same). Further, Defendant's notice of 30(b)(6) deposition duces tecum almost exclusively seeks opinion work product.

The scope of waiver in both instances is carefully tailored, considering fairness in light of the underlying purposes the respective doctrines protect. See S.E.C. v. Roberts, 254

F.R.D. 371, 378 (N.D. Cal. 2008) ("[T]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures" (internal citations and quotations omitted)); see also Wi-LAN, Inc. v. LG Elec., Inc., ___ F.3d ___; No. 11-1626, 2012 WL 2866297, at *4-7 (Fed. Cir. July 13, 2012) (applying Ninth Circuit law in holding that courts must use "fairness balancing" approach when determining scope of pre-litigation privilege waiver). Under this approach, the Court finds no subject matter waiver here.

Although the September 13 e-mail itself is no longer entitled to protection, there is no fairness justification for finding that the email's disclosure results in a waiver of protection for all of Plaintiffs' counsel's opinions about this case. The e-mail was Plaintiffs' counsel's preliminary assessment of Plaintiffs' case against Studer's and Michael's, including a factual account and brief summary of relevant case law. Defendant has not offered any persuasive justification for discovery of additional opinion work product, nor do any of the typical justifications exist here. See, e.g., Chevron, 974 F.2d at 1162-63 (advice of counsel defense raised by party asserting privilege); Weil, 647 F.2d at 23-24 (same); Martin Marietta, 856 F.2d at 626 (selective testimonial use of protected materials by party asserting privilege). Indeed, Plaintiffs are not engaging in selective disclosure, there is no risk of testimonial use of the protected materials, and Plaintiffs have not raised issues which rely upon attorney opinions.

Defendant alleges that its counter-claim for attorneys' fees makes Plaintiffs' attorney's opinion work product discoverable in order to show that Plaintiffs brought this action in bad faith. The Court disagrees. Defendant cannot simply raise an issue and thereby claim entitlement to protected materials. This sort of "reverse" issue injection would destroy – not preserve – the adversary system by making it easy to circumvent the work product doctrine. So long as Plaintiffs are not relying on the e-mail for any claim or defense, or to

gain a tactical advantage,[2] the Court finds no basis for a subject matter waiver with respect to the numerous requests for opinion work product in Defendant's 30(b)(6) deposition notice. Defendant shall not be entitled to any discovery beyond communications addressing withdrawal liability for a successor employer in the construction industry, and only to the extent those materials do not contain opinion work product.[3] To ensure fairness and consistency with the adversary system, Defendant cannot discover additional opinion work product as requested in its 30(b)(6) notice.

**IV.     Relevance of Discovery**

Regardless of any waiver of the attorney-client privilege or work product protection, the parties are still confined by the limits of permissible discovery under the Federal Rules of Civil Procedure. The Federal Rules allow discovery of only relevant information. Fed. R. Civ. P. 26(b)(1). Relevance is defined broadly, such that Rule 26 only requires the information be "reasonably calculated to lead to the discovery of admissible evidence." Id. Courts, however, "*must* limit" discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering," among other things, "the importance of the discovery in resolving the issues." Id. 26(b)(2)(C)(iii) (emphasis added).

---

[2] Defendant argues that Plaintiffs have placed the attorney work product squarely at issue by using it to try to leverage a better result in this litigation. (Dkt. No. 48 at 7-8.) The Court is unpersuaded. At the July 12, 2012 hearing, Defendant asserted that Plaintiffs, by forwarding the September 13 e-mail and threatening to withdraw funding from the Finishing Contractor's Association, sought to coerce Mr. Ecklund to renounce his representation of Studer's so that he might be replaced by less capable counsel. There are numerous problems with this assertion. First, the attorney work product contained in the September 13 e-mail was not likely being used for leverage. The work product itself showed, if nothing else, that the case against Studer's and Michael's would not be an easy victory. Second, Defendant's 30(b)(6) notice does not request any information or documents regarding this alleged effort to leverage a better result. The discovery request specifically targets Plaintiffs' counsel's opinions and analysis of the legal issues in this case. Defendant does not explain how Plaintiffs' counsel's legal analysis would have anything to do with the alleged efforts to leverage a better outcome.

[3] A waiver of this limited scope essentially allows Defendant the following discovery: 1) Defendant may keep the September 13 e-mail; 2) Defendant, having only requested privileged and protected materials in connection with its 30(b)(6) deposition notice, may ask about the e-mail communication in the deposition. However, any such discovery is to be limited by restrictions on discovery into opinion work product discussed herein.

Plaintiffs argue that at bottom, the requested discovery is not relevant to, or likely to lead to the discovery of admissible evidence regarding, any substantive claim or defense in this litigation. (Dkt. No. 37 at 8.) Defendant counters that the information is relevant to its counterclaim for attorneys' fees under 29 U.S.C. § 1451(a); namely, towards showing that Plaintiffs acted in bad faith in bringing this action. (Dkt. No. 48 at 8-9.) Given the Court's findings above, Defendant may keep the September 13 e-mail and ask about the e-mail in its 30(b)(6) deposition, to the extent that Defendant does not inquire into opinion work product beyond the scope of what is contained in the email itself. [4]

## CONCLUSION

Based on the foregoing, Plaintiffs' Motion is GRANTED IN PART and DENIED IN PART. The Court finds that Plaintiffs have waived the attorney client privilege and work product protection as to the September 13 email; however, that waiver is narrowly tailored to the email itself and is not a subject matter waiver. Accordingly, Defendant may keep the September 13 e-mail, and inquire about it during its 30(b)(6) deposition of Plaintiffs. Defendant's Notice of 30(b)(6) Deposition Duces Tecum, to the extent that it requests materials related to "Plaintiffs' counsel's analysis of, or opinion about" issues in this case, is barred by this protective order.

**IT IS SO ORDERED.**

Dated: July 26, 2012

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiffs' alternative request that the Court bifurcate Defendant's counterclaim and defer discovery regarding the e-mail until after a decision on the merits is denied. (Dkt. No. 37 at 9-10.)