1

2

3

4

5

6

7

8

9          UNITED STATES DISTRICT COURT

10        NORTHERN DISTRICT OF CALIFORNIA

11

12   RESILIENT FLOOR COVERING                    Case No.  11-cv-05200-JSC
     PENSION TRUST FUND BOARD OF
13   TRUSTEES, et al.,
                                                 **ORDER RE: DEFENDANT'S MOTION
14               Plaintiffs,                     FOR SUMMARY JUDGMENT**

15        v.                                     Re: Dkt. No. 161

16   MICHAEL'S FLOOR COVERING, INC.,

17               Defendant.

18

19         Plaintiffs, a multi-employer pension fund and its board of trustees, seek a declaration that

20   Defendant Michael's Floor Covering, Inc. is responsible for withdrawal liability under the

21   Employee Retirement Income Security Act of 1974 ("ERISA") as a successor to a now-closed

22   flooring company.  Following a bench trial, the Court found that that Michael's is not a successor

23   employer and entered judgment for Michael's.  The Ninth Circuit reversed and remanded and

24   Michael's now moves for summary judgment. (Dkt. No. 161.)  Having considered the parties'

25   briefs and having had the benefit of oral argument on July 7, 2016, and supplemental briefing

26   following the hearing, the Court GRANTS Michael's motion for summary judgment.  Because the

27   record does not support an inference that Michael's had notice of the predecessor flooring

28   company's potential withdrawal liability it is not liable as a successor employer.

United States District Court
Northern District of California

**BACKGROUND**

Studer's Floor Covering, Inc. ("Studer's") performed sales and installation of residential and commercial flooring products in and around the Vancouver, Washington and Portland, Oregon market from 1960 to 2009. (Dkt. No. 19 ¶¶ 5, 7.) Studer's shareholders dissolved the corporation in December 2009. (Dkt. No. 19 ¶ 8.) Prior to its dissolution, Studer's was a party to a collective bargaining agreement ("CBA") with the Linoleum, Carpet and Soft Tile Applicators Local Union No. 1236, which is affiliated with District Council No. 5 of the International Union of Painters and Allied Trades, AFL-CIO ("IUPAT" or "Union"). (Dkt. No. 19 ¶ 6.) Pursuant to the CBA, Studer's made contributions for all Studer's employees performing work covered under the CBA. (Dkt. No. 19 ¶ 7.) On or about January 6, 2010, Studer's sent formal notice of its dissolution to Plaintiffs, enclosing its final pension contribution under the CBA and advising that Studer's was no longer a contributing employer. (Dkt. Nos. 19 ¶ 12; 19-2 at 7.[1])

In October 2009, shortly before Studer's liquidation, Michael Haasl, who had been a salesman at Studer's for 19 years, incorporated Michael's Floor Covering, Inc. (Dkt. No. 18 ¶ 20.) The day after Studer's closed, on January 1, 2010, Haasl opened Michael's in the location previously occupied by Studer's.

Approximately eight months later, on August 4, 2011, Plantiffs sent notices to Studer's and Michael's, as Studer's successor, claiming withdrawal liability in the amount of $2,291,014. (Dkt. No. 19-1.) Studer's and Michael's separately requested review of the assessment of withdrawal liability. (Dkt. Nos. 159-1; 160-1.) Studer's and Plaintiffs entered into a tolling agreement for Studer's deadline to request arbitration and an assessment of any interim payments to allow Plaintiffs time to review and respond to Studer's review request. (Dkt. No. 160-1 at 1.)

Shortly thereafter, Plaintiffs sued Michael's asserting two claims for relief: (1) for withdrawal liability, and (2) for unpaid contributions. (Dkt. No. 1.) Plaintiffs and Michael's then entered into a tolling agreement tolling Michael's deadline to initiate arbitration until 90 days after entry of a final non-appealable order and judgment in this action. (Dkt. No. 159-1 at 1.) Six

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

months later, Plaintiffs amended the complaint to include a claim for declaratory relief seeking a judicial determination that Michael's was a substantial continuation of Studer's such that it is liable as a successor employer for Studer's withdrawal liability or unpaid contributions under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA").[2]  (Dkt. No. 32.)

The parties thereafter filed cross-motions for summary judgment.  (Dkt. Nos. 67 & 71.)  At the hearing on these motions, the parties stipulated to the Court converting the motions into a bench trial and making findings of fact.  (Dkt. No. 100.)  The Court found that Michael's was not a successor to Studer's because its business was not a substantial continuation of Studer's and thus Michael's was not liable for either withdrawal liability or unpaid contributions.  (Dkt. No. 107.)  Plaintiffs appealed and the Ninth Circuit Court of Appeals reversed and remanded.  *See Resilient Floor Covering Pension Trust Fund Bd. of Trustees v. Michael's Floor Covering, Inc.*, 801 F.3d 1079 (9th Cir. 2015) ("*Resilient*"), cert. denied sub nom. *Michael's Floor Covering, Inc. v. Resilient Floor Covering Pension Fund*, No. 15-1118, 2016 WL 866494 (U.S. May 23, 2016).

Following remand, Plaintiffs filed a federal action against Studer's seeking interim withdrawal liability payments.  *Resilient Floor Covering Pension Trust Fund Board of Trustees et al v. Studer's Floor Covering, Inc.* ("*Studer's*"), No. 16-2468 JSC, Dkt. No. 1.  The *Studer's* action was related to this case and Studer's has since answered and counterclaimed.  *Studer's*, No. 16-2468, Dkt. Nos. 6, 18.

Michael's also filed the now pending motion for summary judgment in this action.  (Dkt. No. 161.)  The only new evidence offered with the motion is two supplemental declarations: a second supplemental declaration from Scott Studer (Dkt. No. 160) and a fifth supplemental declaration from Michael Haasl (Dkt. No. 159).  At oral argument, the Court ordered the parties to submit supplemental briefing on the issue of notice, which they have since done.  (Dkt. Nos. 170,

---

[2] The MPPAA amendments to ERISA provide, in part, that "[i]f an employer withdraws from a multiemployer [pension] plan in a complete withdrawal ..., then the employer is liable to the plan" for "withdrawal liability." 29 U.S.C. § 1381(a).  Withdrawal liability "is the amount determined [under the statute] ... to be the allocable amount of unfunded vested benefits" accrued at the time of the employer's withdrawal. § 1381(b); *see also* § 1391. For "employer[s] that ha[ve] an obligation to contribute under a plan for work performed in the building and construction industry," there is no withdrawal liability if they cease operations entirely for at least five years. § 1383(b)(1).

United States District Court
Northern District of California

171, 173.)

## DISCUSSION

Michael's moves for summary judgment on all of Plaintiffs' claims for relief: declaratory relief, withdrawal liability, and unpaid contributions.  At oral argument, Plaintiffs clarified that their primary claim is for declaratory relief—Plaintiffs seek a declaration that Michael's is a successor employer to Studer's and thus liable for Studer's withdrawal liability.  Plaintiffs agreed that their withdrawal liability claim could only be adjudicated if Michael's waived arbitration, which it has yet to do, and they have abandoned their claim for unpaid contributions.[3]  Therefore, the question for the Court is whether a reasonable trier of fact could find that Michael's is a substantial continuation of Studer's and had notice of the potential withdrawal liability such that the Court could declare that Michael's is a successor to Studer's and thus liable for Studer's withdrawal liability.

### A.   Michael's Jurisdictional Challenge

Michael's contends that Plaintiffs' declaratory relief claim fails because Plaintiffs must establish Studer's withdrawal liability as a condition precedent to declaring Michael's successor liability.  The liability has not been established because Plaintiffs and Studer's entered into a tolling agreement following Studer's challenge to Plaintiffs' assessment.  And this Court cannot establish that liability since disputes regarding ERISA withdrawal liability must be arbitrated.  *See* 29 U.S.C. § 1401(a)(1); *Tsareff v. ManWeb Servs., Inc.*, 794 F.3d 841, 850 (7th Cir. 2015)*; Teamsters Pension Trust Fund-Bd. of Trustees of W. Conference v. Allyn Transp. Co.*, 832 F.2d 502, 504 (9th Cir. 1987) (citing Section 1401(a)(1)).  At oral argument, Michael's reframed this argument as an attack on this Court's subject matter jurisdiction contending that there is no "case or controversy" without Studer's liability having first been established.  The Court construes the

---

[3] In its moving papers, Michael's stated that "Plaintiffs' counsel confirmed on April 26, 2016 that Plaintiffs will not pursue the [third claim for relief for unpaid] contribution[s]."  (Dkt. No. 161 at 8:2-3.)  Plaintiffs did not contest this representation in their opposition or otherwise address their unpaid contributions claim, and have thus abandoned any claim for unpaid contributions.  *See Jenkins v. City of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (concluding that plaintiff had abandoned claims not raised in opposition to summary judgment).

United States District Court
Northern District of California

1    argument as one regarding ripeness.

2          The Declaratory Judgment Act provides that: "[i]n a case of actual controversy within its

3    jurisdiction ... any court of the United States ... may declare the rights and other legal relations of

4    any interested party seeking such declaration, whether or not further relief is or could be sought."

5    28 U.S.C. § 2201(a). "[T]he phrase a case of actual controversy refers to the type of 'Cases' and

6    'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549

7    U.S. 118, 127 (2007). "The constitutional ripeness of a declaratory judgment action depends upon

8    whether the facts alleged, under all the circumstances, show that there is a substantial controversy,

9    between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

10   issuance of a declaratory judgment." *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) (internal

11   quotation marks omitted).

12         There is a substantial controversy between the parties here, and they have adverse legal

13   interests.  Plaintiffs assessed Studer's withdrawal liability in the August 4, 2011 letter.  Under

14   ERISA, such withdrawal liability is "presumed correct." *See* 29 U.S.C. § 1401(3)(A).  Further,

15   under ERISA's "pay now, dispute later" provisions, upon the employee benefit fund's assessment,

16   an employer must pay the assessed withdrawal liability pending a final decision by an arbitrator.

17   *See* 29 U.S.C. §§ 1399(c)(2), 1401(d); *see also Lads Trucking Co. v. Bd. of Trustees of W.*

18   *Conference of Teamsters Pension Trust Fund*, 777 F.2d 1371, 1375 (9th Cir. 1985) ("employer

19   must commence payments within sixty days of the pension plan's demand regardless of any

20   review proceeding"); *see also* LEE T. POLK, 3 ERISA PRACTICE AND LITIGATION § 12:7 (April

21   2016 Update) ("under the unforgiving 'pay now, dispute later' rule, the entire process of

22   challenging a withdrawal liability assessment on the merits is separate from the employer's

23   obligation to begin immediate payments to the fund—or risk default.").  This understanding is

24   consistent with the language of both Michael's and Studer's Tolling Agreements with Plaintiffs:

25   the recitals in both state that "by notice dated August 4, 2011, the Pension Fund assessed

26   withdrawal liability against Studer's/Michael's pursuant to Section 4202(2) and 4219(b)(1) of the

27   Employee Retirement Income Security Act of 1974...[t]he amount of withdrawal liability assessed

28   was $2,291,014."  (Dkt. Nos. 159-1 at 1; 160-1 at 1.)  Plaintiffs now seek a declaration that

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1  Michael's owes the withdrawal liability.  Thus, there is a substantial controversy—whether

2  Michael's owes Plaintiffs over $2 million—between parties having legal adverse interests:

3  Plaintiffs claim Michael's owes withdrawal liability as a successor and Michael's contends it is

4  not a successor and thus does not owe anything.

5      The question, then, is whether given that the fact of and amount of Studer's withdrawal

6  liability, although assessed, will be challenged in arbitration, the present dispute between Plaintiffs

7  and Michael's is sufficiently "immediate" and "real" to be ripe.  It is.  As is explained above,

8  under ERISA, Studer's arguably owes the payments now and then can be reimbursed if the

9  arbitrator finds in its favor.  Thus, Michael's, if a successor, also arguably owes the payments

10  now.  Further, there is a presumption that Plaintiffs' assessment is correct, and Studer's (or

11  Michael's if a successor) bears the burden of showing that no withdrawal liability is owed.

12      Further, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan

13  concerning a determination made under sections 1381 through 1399 of this title shall be resolved

14  through arbitration."  29 U.S.C.A. § 1401.  Thus, any dispute Studer's may have must be resolved

15  through arbitration.  In contrast, because successor liability is an equitable doctrine, Michael's

16  liability as a successor must first be established by a court.  The successorship question is

17  generally resolved by the courts because "if a purchaser is not, in fact, a successor within the

18  meaning of the doctrine, the purchaser is not subject to the MPPAA and thus not bound by the

19  statute's arbitration provision."  *See Heavenly Hana LLC v. Hotel Union*, No. 14-CV-03743-JCS,

20  2016 WL 524327, at *7 (N.D. Cal. Feb. 10, 2016) (citing  *Resilient*, 801 F.3d 1079); *Tsareff*, 794

21  F.3d 841; *Hawaii Carpenters Tr. Funds v. Waiola Carpenter Shop, Inc*., 823 F.2d 289 (9th Cir.

22  1987).  Adjudicating the question presented by Plaintiffs' declaratory relief claim will determine

23  whether Plaintiffs' quest for withdrawal liability ends with this lawsuit (if Plaintiffs lose) or

24  whether Michael's is a successor to Studer's and therefore currently liable for withdrawal liability

25  payments pending a final determination in arbitration (if the Court concludes that Michael's is a

26  successor). The declaratory relief question "therefore savors of 'sufficient immediacy and reality'

27  to warrant resolution."  *Golden v. California Emergency Physicians Medical Group*, 782 F.3d

28  1083, 1088 (9th Cir. 2015).

1    Michael's citation to the Ninth Circuit's opinion in this case for the proposition that this

2    Court cannot declare it a successor until after arbitration finally determines Studer's withdrawal

3    liability is unpersuasive.  Michael's relies on the court's holding that "a bona fide successor can be

4    liable for its predecessor's MPPAA withdrawal liability, both in general and with regard to the

5    special building and construction trade provisions in particular, so long as the successor had notice

6    of the liability."  (Dkt. No. 161 at 15:2-5 (citing *Resilient*, 801 F.3d at 1095).)  Michael's contends

7    that because each of the cases cited in the footnote following this statement involved situations

8    where withdrawal liability had been established, [4] withdrawal liability must likewise be

9    "established" here before the Court can proceed to the successorship inquiry.  None of those cases,

10   however, addresses whether the successorship question would still be ripe if the withdrawal

11   liability had been assessed, but the arbitration to finally determine the liability had not yet

12   occurred.  Moreover, if the Ninth Circuit had meant that a court lacks jurisdiction to decide the

13   successorship question until the completion of the withdrawal liability arbitration (if invoked),

14   then the Ninth Circuit itself would have lacked jurisdiction to issue its opinion.  In other words, if

15   Michael's is correct, then the Ninth Circuit's opinion in this case would be void for lack of subject

16   matter jurisdiction.  *See Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701, 708 (9th Cir.

17   2009) ("ripeness can be raised at any time and is not waivable.").

18         Michael's reliance on the Seventh Circuit's decision in *Tsareff*, 794 F.3d 841, is equally

19   unavailing.  In *Tsareff*, the employee benefit fund brought suit against both the original employer

20   (Tiernan & Hoover) and the alleged successor (ManWeb).  The plan sent notice of withdrawal

21   liability to both entities and both failed to pay or initiate arbitration.  *Id.* at 844.  The district court

22   concluded that Tiernan & Hoover had waived its right to dispute the withdrawal liability

23   assessment by failing to initiate arbitration proceedings and, therefore, owed the full amount of the

24

25   ───────────────
     [4] *See Resilient*, 801 F.3d at 1095 n.4 (citing *Chicago Truck Drivers, Helpers & Warehouse*

26   *Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995);
     *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1327 (7th

27   Cir. 1990); *Cent. States, Se. & Sw. Areas Pension Fund v. Hayes*, 789 F.Supp. 1430, 1436 (N.D.
     Ill. 1992); *Auto. Indus. Pension Trust Fund v. S. City Ford, Inc.*, No. C 11–04590 CW, 2012 WL

28   1232109 (N.D. Cal. Apr. 12, 2012); *Trs. of Utah Carpenters' & Cement Masons' Pension Trust v.
     Daw, Inc.*, No. 2:07–CV–87 TC, 2009 WL 77856, at *3 (D. Utah Jan. 7, 2009).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   assessment, but also concluded that ManWeb was not liable as a successor because it lacked notice

2   of the withdrawal liability.  *Id.* at 844, 846.   The Seventh Circuit reversed.  Nothing in *Tsareff*

3   suggests that the successor question is not ripe until the employer's withdrawal liability is

4   conclusively established.  Neither the *Tsareff* district court nor the *Tsareff* Seventh Circuit

5   decision indicates that the courts could only decide the question of successor liability because

6   Tiernan & Hoover had waived its right to challenge the withdrawal liability assessment.  Further,

7   it is unclear what Michael's means when it says that Studer's withdrawal liability would have to

8   be "established" first.  As explained above, Plaintiffs' assessment is presumed correct and Studer's

9   (or Michael's, if a successor) bears the burden of proving Plaintiffs wrong.  Withdrawal liability is

10  sufficiently "established" for purposes of making Plaintiffs' declaratory relief claim ripe.

11  **B.      The Merits**

12          "Federal courts have developed a federal common law successorship doctrine which now

13  extends to almost every employment law statute." *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th

14  Cir. 1995).  "[T]he successorship doctrine, when applicable, holds legally responsible for

15  obligations arising under federal labor and employment statutes businesses that are substantial

16  continuations of entities with such obligations." *Resilent*, 801 F.3d at 1090.  As a matter of

17  fairness, successor employers can be held responsible for the liabilities of the predecessor business

18  "only when they took over the business with notice of the liability." *Id.* at 1093.  As a matter of

19  first impression, the Ninth Circuit held that a successor employer can be subject to MPPAA

20  withdrawal liability so long as it had notice of the liability.  *Resilent*, 801 F.3d at 1095; *see also id.*

21  at 1092-93.

22          Michael's moves for summary judgment on two grounds.  First, that no reasonable trier of

23  fact could find that Michael's is a successor to Studer's, and second, that no reasonable trier of

24  fact could find that Michael's had notice of the withdrawal liability.

25

26          **1.      The Successor Question**

27          As for the successor inquiry, the Court cannot conclude that every reasonable trier of fact

28  must find that Michael's is not a successor; indeed, with the parties' permission, the Court

converted the parties' original motion for summary judgment to a bench trial because the record presented genuine issues of material fact on this question, especially given the myriad factors that the question involves. The Ninth Circuit's clarification of the standard governing the successorship question in the construction industry withdrawal liability context does not change the Court's assessment. Thus, Michael's motion for summary judgment on the grounds that it is not a successor is denied. Notice is the critical question.

### 2. Notice of the Liability

#### a) Michael's Did Not Have Notice

To impose liability on a successor for a predecessor's withdrawal liability, the plaintiff must prove that the successor had notice of the predecessor's withdrawal liability prior to the transfer of the business. *See Resilent*, 801 F.3d at 1095; *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995). "Notice can be proven not only by pointing to the facts that conclusively demonstrate actual knowledge, but also by presenting evidence that allows the fact finder to imply knowledge from the circumstances." *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1329 (7th Cir. 1990). The Seventh Circuit has held that "notice of contingent withdrawal liability satisfies the successor liability notice requirement" where the amount of the withdrawal liability is unknowable prior to an asset sale. *Tsareff*, 794 F.3d at 847; *see also United Food and Commercial Workers Local 1546 Pension Fund v. Variety Meat Co.*, 2015 WL 3213402 (N.D. Ill. June 10, 2016) ("The notice requirement does not mean that the precise amount of withdrawal liability must be known to the buyer—notice of contingent withdrawal liability is sufficient."); *Heavenly Hana LLC v. Hotel Union*, No. 14-CV-03743-JCS, 2016 WL 524327 *11 (N.D. Cal. Feb. 10, 2016) (suggesting that knowledge of contingent withdrawal liability could be sufficient to impose successor liability).

There is no genuine dispute that Michael's did not have notice of Studer's potential withdrawal liability. Michael Haasl, Michael's owner, attests that prior to his receipt of the Plan's August 2011 letter claiming withdrawal liability (over 18 months after Michael's opened) he "did not know the name of the pension fund" to which Studer's contributed, did not know the amount

United States District Court
Northern District of California

Studer's contributed, or whether it had made the required contributions.  (Dkt. No. 159 at ¶ 10.)
Haasl also "had no knowledge that a pension fund could or would make a claim against Studer's
for withdrawal liability and . . . did not have any understanding of what withdrawal liability was or
the legal basis for imposing withdrawal liability or being subject to the withdrawal liability."  (*Id*.
¶ 11.)  He also had no discussion with anyone that mentioned in any way Studer's potential
liability to the pension fund after Studer's stopped doing business.  (*Id.* ¶ 12.)

Plaintiffs have not identified any evidence that disputes Haasl's lack of knowledge.  Their
emphasis on Haasl's admission that he knew that Studer's was a union shop (Dkt. No. 73-4 at
21:1-20) is insufficient to support a reasonable inference of knowledge of Studer's potential
withdrawal liability, especially since Haasl was himself a Studer's non-union salesperson and not
an executive who dealt with the union on Studer's behalf.  Their reliance on Frank Battaglia's
testimony is also unavailing.  Before Michael's opened, Battaglia, a trustee for the at-issue pension
fund, asked Haasl whether Haasl wanted to open a union or non-union business.  (Dkt. No. 73-2 at
55:17-56:3.)   When Haasl responded that he was undecided, Battaglia stated that "if it was me, in
today's world, I would not be union" "because you can't make any money being union today."
(*Id.* at 56:7-11.)  Battaglia also told Haasl that "if the pension was fully funded as of today, I
would go non-union the next day." (Dkt. No. 73-2 at 56-57.)  These statements do not support an
inference that Michael's had notice of Studer's potential withdrawal liability.  There is nothing in
the record to suggest that Haasl would have known what the pension being fully funded meant, or
why it was significant to Battaglia's decision to stay a union shop; that is, that the Plan was not
fully funded meant that a participating employer could not withdraw from the Plan without
incurring withdrawal liability.  Plaintiffs, for whatever reason, chose not to ask Battaglia any
further questions regarding this subject and do not offer a declaration from him.  And there is no
reason to believe Battaglia would have explained withdrawal liability to Haasl given his testimony
that he was unaware that the Plan could make a claim against Michael's for withdrawal liability.
(*Id.* at 55:14-56:10.)  On this record, no reasonable trier of fact could find Michael's had notice of
Studer's potential withdrawal liability; in other words, it is undisputed that Michael's had no

United States District Court
Northern District of California

United States District Court
Northern District of California

1  knowledge that Studer's was potentially liable to the Plan for closing down its business and

2  withdrawing from the Plan.

3         *Tsareff*, 794 F.3d 841, is instructive.  Defendant ManWeb entered into an asset purchase

4  agreement with Tiernan & Hoover.  *Id*. at 843.  Although ManWeb was a nonunion employer,

5  Tiernan & Hoover was a party to a collective bargain agreement and contributed to a multi-

6  employer pension fund.  *Id*.   Once Tiernan & Hoover was sold, it ceased operations and thus

7  pension fund contributions.  *Id*. at 843-44. Six months later, the plan sent Tiernan & Hoover a

8  letter assessing withdrawal liability.  *Id*. at 844.  When Tiernan & Hoover failed to pay, the plan

9  brought suit against it and against ManWeb on a successor liability theory.  *Id*. The Seventh

10  Circuit concluded that the evidence was sufficient to support a finding that ManWeb had notice of

11  Tiernan & Hoover's contingent withdrawal liability because ManWeb's owner had "discussed

12  unfunded pension liabilities" with Tiernan & Hoover's President, "knew that the pension was

13  short of money," "was very aware of the concept of withdrawal liability prior to the asset sale,"

14  and that the asset sale was not a transaction he "specifically wanted to do because he understood

15  the underfunded portion of the pension fund and knew of the associated risk of potential liability."

16  *Id*. at 847-48 (internal quotation marks omitted).  Further, "the contingent withdrawal liability was

17  explicitly included in the" purchase agreement.  *Id*. at 848.  Here, in contrast, it is undisputed that

18  Haasl was not familiar with withdrawal liability in general and Studer's potential liability in

19  particular.

20         Plaintiffs' alternate argument that the only notice required is notice that the predecessor

21  was a union shop and that if the successor has such knowledge it is obligated to inquire as to any

22  potential liabilities is not supported by the case law.  The Ninth Circuit specifically held "that

23  successor employers would be held liable only when they took over the business with *notice of the*

24  *liability*." *Resilient*, 801 F.3d at 1092−93 (emphasis added).  The notice required is that of the

25  *liability*—not notice of the fact that the predecessor was a union shop.  Plaintiffs' argument, if

26  accepted, would eviscerate the notice requirement as it would be the rare case where an alleged

27  successor was not aware of whether the predecessor was a union shop.

28

United States District Court
Northern District of California

The facts here are similar to those in *United Food & Commercial Workers Local 1546 Pension Fund v. Variety Meat Co.*, No. 15-137, 2016 WL 3213402 (N.D. Ill. June 10, 2016). There the defendant bought the assets of the withdrawing employer and the pension fund sought to recover withdrawal liability from the defendant purchaser.  The fund contended that the defendant's owner "was likely aware of the potential for withdrawal liability" because he was aware the seller was affiliated with a union, he had worked in the industry a long time, and he had worked for the seller's predecessor at one time.  *Id.* at *4.  The court concluded that no reasonable trier of fact could find that the defendant knew of the seller's contingent withdrawal liability.  *Id.* at *4-5.  Further, the court held that the owner's awareness of the seller's union affiliation was insufficient to put the company on notice to make a further inquiry into withdrawal liability given his unfamiliarity union-related pension funds.  *Id.* at *5.  Here, Haasl similarly knew that Studer's had union employees, and there is a reasonable inference that he was generally aware that Studer's made payments to a pension fund (but not a particular pension fund), but he was otherwise unfamiliar with union-related pension funds and had no knowledge of withdrawal liability.  No reasonable trier of fact could find that Michael's had notice of Studer's contingent withdrawal liability.

*Heavenly Hana LLC v. Hotel Union & Hotel Industry of Hawaii Pension Plan*, No. 14-cv-03743-JCS, 2016 WL 524327 (N.D. Cal. Feb. 10, 2016), applied the notice requirement in the context of successor liability for withdrawal liability in the construction industry.  There, the alleged successor had previously participated in a multiemployer pension plan and was admittedly well aware of the potential for withdrawal liability.  *Id.* at *3-4.  Indeed, the successor had obtained a legal opinion letter regarding potential withdrawal liability that again advised the successor that withdrawal liability arises if the pension fund has unfunded liabilities.  *Id.* at *4. The court nonetheless found that the successor did not have the required notice because the successor was not aware that the pension fund was in fact underfunded.  *Id.* at *5-7, 11-15. Michael's knowledge here is far less than that of the successor in *Heavenly Hana.*  Michael's had no prior experience with union pension funds, had no knowledge of the withdrawal liability concept, did not know which pension fund Studer's contributed to, and did not know that the fund

United States District Court
Northern District of California

1    to which Studer's contributed was underfunded.  At most, he knew that Studer's had union

2    employees and contributed to a pension fund.  And there is no evidence that Michael's knew that

3    the pension fund that Battaglia obliquely referred to as underfunded, was the same pension fund to

4    which Studer's contributed.  Further, unlike the *Heavenly Hana* successor who was aware that an

5    asset purchase agreement could lead to liability for the seller's liabilities, there is no evidence in

6    the record that suggests that Michael's had any inkling that it could found liable for any of

7    Studer's liabilities.  Indeed, Battaglia, Plaintiffs' trustee, did not believe Michael's could be found

8    liable.  These undisputed facts cannot constitute notice of Studer's potential liability.

9           While not cited by Plaintiffs, the Court notes that in *Bd. of Trustees of Auto. Mechanics'*

10   *Local No. 701 Union & Indus. Pension Fund v. Full Circle Grp., Inc.*, 826 F.3d 994, 997 (7th Cir.

11   2016), the Seventh Circuit held that "a lack of familiarity with the concept of withdrawal liability

12   cannot be an excuse."   *Full Circle Group*, however, is distinguishable.   There, the owner of the

13   successor company was the son of the owner of the predecessor company and he knew that the

14   predecessor company (where he had worked for his father) contributed to a union pension fund.

15   *Id.* at 995.  Further, the son/owner of the successor company had the assistance of legal counsel to

16   advise and facilitate the sale and these advisors must have known that most pension funds are

17   underfunded.  *Id.* at 996.  Under these circumstances, the court concluded that "knowing that he

18   was dealing with a union pension fund he was on notice that there was a possibility of [withdrawal

19   liability].  A lack of familiarity with the concept of withdrawal liability cannot be an excuse; he

20   had lawyers to advise him on [his company's] legal obligations."  *Id.* at 997.  Here, in contrast,

21   there is no evidence that Haasl knew he was dealing with a union pension fund until Michael's

22   was served with notice of the withdrawal liability—a year and half after Michael's opened.

23   Further, this was not a sale of one business to another and there is no evidence in the record that

24   Haasl ever consulted with attorneys or any other advisors.  And there is no evidence that Haasl

25   was related to Studer's owners or anything other than a long-time sales person.  *Full Circle* thus

26   does not persuade the Court that a reasonable trier of fact could find that Michael's had the

27   required notice.

28           **b) Notice is Required**

13

At oral argument Plaintiffs made a somewhat different argument from their papers; namely, that because Michael's did not purchase Studer's business it is not a "bona fide purchaser" and thus was not entitled to notice of the liability prior to opening its business.  As this argument was not addressed in the briefs, the Court permitted Plaintiffs to file a supplemental brief to which Michael's responded.  For this argument, Plaintiffs rely on the Ninth Circuit's statement that "a *bona fide* successor can be liable for its predecessor's MPPAA withdrawal liability, both in general and with regard to the special building and construction trade provisions in particular, so long as the successor had notice of the liability." *Resilient*, 801 F.3d at 1095 (emphasis added).

Plaintiffs contend that this sentence, as well as other language in the Ninth Circuit's opinion, suggest that there are two types of successors—bona fide successors and successors.  The latter successors are those successors who make a conscious decision to take over the predecessor's customer base without paying anything for it.  According to Plaintiffs, these successors, who have reaped an advantage without paying anything for it are not bona fide successors, and thus, no notice is required.  Plaintiffs have pointed to *no* case which supports this novel argument and the Court could locate none.  Instead, courts appear to use "successor" and "bona fide successor" interchangeably.

The "bona fide successor" language appears to have first arisen in *Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. 168 (1973), which considered the question of "whether the bona fide purchaser of a business, who acquires and continues the business with knowledge that his predecessor has committed an unfair labor practice in the discharge of an employee, may be ordered by the National Labor Relations Board to reinstate the employee with backpay" because the "bona fide purchaser" was a "bona fide successor."  *Id*. at 170, 180.  In concluding that it could, the Supreme Court noted the need to "strik[e] a balance between the conflicting legitimate interests of the bona fide successor, the public, and the affected employee."  *Id*. at 181.  Equity for the successor was met "[s]ince the successor must have notice before liability can be imposed, 'his potential liability for remedying the unfair labor practices is a matter which can be reflected in the price he pays for the business, or he may secure an indemnity clause in the sales contract which

United States District Court
Northern District of California

1    will indemnify him for liability arising from the seller's unfair labor practices." *Id*. at 185.

2           The Ninth Circuit used the term "bona fide successor" in the context of successor liability

3    for labor violations in *Steinbach v. Hubbard*, 51 F.3d 843 (9th Cir. 1995). The court held that

4    "successor liability can attach when 1) the subsequent employer was a bona fide successor and 2)

5    the subsequent employer had notice of the potential liability," and that "[w]hether an employer

6    qualifies as a bona fide successor will hinge principally on the degree of business continuity

7    between the successor and predecessor." *Id*. at 846. Thus, *Steinbach* used "bona fide" to mean

8    that the purported successor was in fact a successor based on the degree of business continuity.

9    As far as this Court is aware, *Resilient* is the only time since *Steinbach* that the Ninth Circuit has

10   used the "bona fide successor" language rather than simply "successor" language. *See, e.g*.,

11   *Sullivan v. Dollar Tree Stores, Inc*., 623 F.3d 770, 780 (9th Cir. 2010) (discussing successorship in

12   the context of FMLA liability). The three times the Ninth Circuit used the phrase "bona fide

13   successor" prior to *Steinbach* support the court's conclusion that there is not any distinction

14   between a bona fide successor and a successor. *See, e.g*., *Haley & Haley, Inc. v. N.L.R.B*., 880

15   F.2d 1147, 1149 (9th Cir. 1989) (examining whether a party was an alter ego rather than a bona

16   fide successor); *N.L.R.B. v. FMG Indus*., 820 F.2d 289, 293 (9th Cir. 1987) (querying whether the

17   court's authority to consider successorship status extends to situations where the successorship is a

18   "sham or a bona fide successor."); *United Auto., Aerospace & Agr. Implement Workers of Am.,*

19   *UAW v. N.L.R.B*., 442 F.2d 1180, 1183 (9th Cir. 1971) (referencing in a footnote a situation where

20   a "successor is not a bona fide successor" without discussion). Thus, there is no precedent for

21   distinguishing between a bona fide and non-bona fide successor unless Plaintiffs are making an

22   alter ego claim which they are not. The Court therefore rejects Plaintiffs' argument that there is

23   some third category within the successorship analysis for non-bona fide successor—the new entity

24   is either a successor or it is not.

25           Plaintiffs' related argument that notice is only required for some types of successors, but

26   not for successors like Michael's who make a conscious decision to take over a predecessor's

27   customer base, fares no better. In *Resilient*, the Ninth Circuit relied heavily on its prior decision in

28   *Bates v. Pac. Mar. Ass'n*, 744 F.2d 705 (9th Cir. 1984), to develop the successorship standard in

the context of MPPAA withdrawal liability. In *Bates*, the Ninth Circuit considered whether successor liability was properly imposed in the Title VII employment discrimination context.  The district court held that an employer, who was not a party to a consent decree, could be bound by the terms of the consent decree when it replaced one of the original parties to the consent decree at a job site.  The three principle factors the court relied upon were "(1) the continuity in operations and work force of the successor and predecessor employers, (2) the notice to the successor employer of its predecessor's legal obligation, and (3) the ability of the predecessor to provide adequate relief directly."  *Bates*, 744 F.2d at 709-710.  As Michael's is alleged to have done here, the new employer had taken over the operations of the party to the consent decree without the payment of any monies for the business, *id.* at 710, yet the court held that notice was still required; indeed, the new employer's knowledge of the consent decree was critical.

Imposing successor liability without notice would run afoul of the equitable concerns underlying the successorship inquiry.  "Because the origins of successor liability are equitable, fairness is a prime consideration in its application."  *Criswell v. Delta Air Lines, Inc.*, 868 F.2d 1093, 1094 (9th Cir. 1989).  Thus, "[d]ecisions on successorship must balance, *inter alia*, the national policies underlying the statute at issue and the interests of the affected parties." *Steinbach*, 51 F.3d at 846.  Further, "[t]he principle reason for the notice requirement is to ensure fairness by guaranteeing that a successor had an opportunity to protect against liability by negotiating a lower price or indemnity clause."  *Id*. at 847.  Plaintiffs argue that there can be no better purchase price here than free, but this glib statement ignores that with notice Michael's could have changed its business plan to avoid withdrawal liability. Tellingly, in *Bates* the court noted that while the successor "may not have used this notice to negotiate lower prices from [the predecessor given that no price was paid], [] the information allowed [the successor] to consider whether to displace [the predecessor] and to shape its hiring practices to avoid any potential problems."  *Bates*, 744 F.2d at 710.  So too here.  Notice would have allowed Michael's to make decisions regarding how to structure its business to avoid incurring any withdrawal liability.

Finally, it bears emphasis that Plaintiffs have not argued, and certainly have not submitted any evidence, that remotely suggest that Michael's is merely the alter ego of Studer's or that its

16

incorporation was otherwise a sham to avoid Studer's union obligations. There is no evidence that supports an inference that Studer's owners somehow continued to benefit from Michael's operations.  Rather, Plaintiffs contend that Michael's is a substantial continuation of Studer's and thus a successor.  Under Ninth Circuit law, Michael's, if found to be a successor, can be liable for Studer's labor liabilities, including withdrawal liability, only if it had notice of that liability. *Resilient*, 801 F.3d at 1095.   As the record does not support a finding by a reasonable trier of fact of such notice, Michael's summary judgment motion must be granted.

## CONCLUSION

For the reasons stated above, Michael's motion for summary judgment is GRANTED. Judgment will be entered in Michael's favor on Plaintiffs' complaint.

On June 8, 2016, the Court denied Plaintiffs' motion to file their opposition to Michael's motion for summary judgment under seal.  (Dkt. No. 167.)  Plaintiffs were ordered to file their opposition on the public docket in accordance with Local Rule 79-5(e)(2), but Plaintiffs have not done so.  Plaintiffs are therefore again ordered to file their opposition brief on the public docket, and must do so on or before October 3, 2016.

The Clerk shall close the action.

**IT IS SO ORDERED.**

Dated: September 28, 2016

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California